IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIGUEL ARCIBA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | |
| | § | No. 3:12-cv-592-N-BN |
| WILLIAM STEPHENS, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Miguel Arciba, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

## Background

Petitioner was charged with capital murder by an Ellis County grand jury. After a three-day pretrial hearing, his motions to quash indictment and to suppress evidence, a DNA test, hair identification evidence, and oral and written admissions were denied by the trial court. Petitioner was found guilty of capital murder and sentenced to life imprisonment. Petitioner's conviction was affirmed on direct appeal. *See Arciba v. State*, No. 10-08-00120-CR, 2009 WL 5155532 (Tex. App. – Waco, Dec. 30, 2009, pet. ref'd). His application for state post-conviction relief was denied without written order on the findings of the trial court. *See Ex parte Arciba*, WR-76,955-01

(Tex. Crim. App. Feb. 1, 2012). Petitioner then filed this action in federal district court.

The underlying facts and procedural history of this case are largely uncontested and well known to the parties. On July 25, 2006, 81-year-old Doris Phillips disappeared from her home in rural Ellis County, Texas. There were no signs of forced entry, but a number of items were missing from the home, including an antique shotgun, a jewelry box, and Phillips's purse.

On August 7, 2006, officers interviewed Petitioner in connection with Phillips's disappearance, and he denied any knowledge or involvement. Approximately three weeks later, the missing shotgun was discovered at a flea market in Canton, Texas. Through additional investigation, Petitioner was identified as the individual who sold the shotgun shortly after Phillips was last seen. On September 3, 2006, four officers went to Petitioner's home to interview him once more. They escorted Petitioner to the Ellis County Sheriff's Office, and an investigator drove Petitioner's car to the office – allegedly so that Petitioner would be able to drive home after the interview. Petitioner believes that the officers may have conducted a warrantless search of the vehicle while they were transporting it to the Sheriff's Office.

During the course of the September 3, 2006 interview, Petitioner gave oral and written statements to Ranger Mark Reinhardt in which he denied knowledge of Phillips's disappearance or her whereabouts. He then consented to a polygraph examination conducted by Secret Service Special Agent Brian Luley. After the questioning was complete, the officers secured a warrant for Petitioner's arrest for burglary of a habitation, and Petitioner was placed under arrest.

-2-

Petitioner was arraigned by Justice of the Peace Curtis Polk early the next morning. A written arraignment form does not indicate whether or not Petitioner requested appointment of counsel. Petitioner urges that he requested appointment of counsel at that time.

On September 5, 2006, a search warrant was issued for Petitioner's vehicle, which was still parked at the Sheriff's Office. During the vehicle search, the officers discovered a bracelet belonging to Phillips, a knife with blood on it, and hair and DNA evidence that tied Petitioner to the disappearance of Phillips. Petitioner was also interviewed by Special Agent Luley on that day.

On September 6, 2006, Petitioner met with investigators and made additional written and oral statements. At that time, investigators prayed with Petitioner and began a practice of praying with Petitioner at the beginning and end of each period of questioning. In his statements on that day, Petitioner admitted to being present in Phillips's home and stealing the shotgun and jewelry box.

The next day, September 7, 2006, Chief Deputy Charles Sullins prayed with Petitioner and then showed him pictures of Phillips and Petitioner's mother. Petitioner immediately had a medical episode of some type during which he collapsed, fell out of his chair, and seemed to shake. He was provided medical attention and questioning ended for the day.

Petitioner made two written statements on September 8, 2006. In the first statement, provided after he was administered a polygraph examination by Secret Service Special Agent Bradley Beeler, Petitioner admitted being present in Phillips's

home with another person identified as Israel Valdez. He claimed that Valdez pushed Phillips, causing her to fall. Petitioner indicated that Valdez then left with Phillips and Petitioner took the shotgun and jewelry box. Shortly after the interview, the officers took Petitioner to his mother's home. At the home, Petitioner and his mother had an emotional conversation in which Petitioner's mother repeatedly told him to tell the truth to the officers. After the meeting, Petitioner asked to speak to Special Agents Luley and Beeler in order to identify the location of Phillips's body. Petitioner then led the investigators to a remote location where Phillips's badly decomposed body was located.

Upon returning to the Sheriff's Office, Petitioner gave another written statement to Investigator Luis Valladares. In that statement, Petitioner added details such as what Phillips was wearing during her abduction and claimed that Valdez had indicated that he would leave the body at the house in which she was eventually discovered.

In five grounds for relief, Petitioner contends that: (1) his oral and written admissions were involuntary and all statements and evidence derived from them should have been suppressed; (2) all of his statements were obtained in violation of his right to counsel; (3) the physical evidence seized from his vehicle resulted from an illegal search; and (4) he received ineffective assistance of counsel (a) at trial and (b) on appeal.

## Legal Standards

Where, as here, a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

-4-

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law . . . A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Further, the Supreme Court has explained that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning," and "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief," such that "[t]here is no merit to the assertion that compliance with § 2254(d) should

be excused when state courts issue summary rulings." *Harrington*, 131 S. Ct. at 784.

## Analysis

"Given that limitations is not jurisdictional, it follows that the Court is not required to address it prior to denying relief." *Coker v. Thaler,* 670 F. Supp.2d 541, 546 (N.D. Tex. 2009). Respondent urges the Court to find Petitioner's application for habeas relief barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations. *See* Dkt. No. 7; *see also* Dkt. No. 15 at 7-9. The Court need not decide this procedural issue as Petitioner is not entitled to federal habeas relief in any event.

Allegedly Involuntary Written and Oral Statements

Petitioner alleges that his multiple written and oral statements were involuntary provided because the pace of questioning "was continual and unrelenting," he was misled to believe the investigators would care for and protect his mother if he cooperated, he was denied counsel despite multiple requests, the officers falsely claimed that his statements were confidential and would not be used against him, and many of the admissions resulted from an improper appeal to his religious values.[1]

"The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the 'totality of the circumstances,' the statement is the product of the accused's 'free and rational' choice." *United States v. Rogers,* 906

---

[1]Petitioner does not identify any particular oral statement that was involuntary and was improperly admitted at trial. Therefore, the undersigned assumes that his oral statements were largely identical to his four written statements.

F.2d 189, 190 (5th Cir. 1990) (quoting *Martinez v. Estelle,* 612 F.2d 173, 177 (5th Cir. 1980)). "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Id.* at 190-91 (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)). A state court's determination of whether officers engaged in coercive tactics to elicit a confession is a question of fact entitled to considerable deference. *See Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (applying AEDPA's presumption of correctness to state court's pretrial findings of fact regarding voluntariness of confession); *see also Miller v. Fenton,* 474 U.S. 104, 117 (1985) ("[S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable").

Prior to trial, the state court made extensive factual determinations on the knowing and voluntary nature of Petitioner's oral and written statements. *See Ex parte Arciba*, WR-76,955-01, Tr. at 86-95. Those findings were affirmed on direct appeal. *See Arciba*, 2009 WL 5155532, at *4-*9. After considering the testimony of nine state witnesses and three defense witnesses and reviewing multiple videos and documents, the trial court concluded:

During the week of September 3, 2006, through September 9, 2006

concluding with his signing the [final] written statement to Investigator Valladares, defendant knew he had a right to an attorney, knew he had the right to terminate any interview at any time and did so, and knew he had the right to remain silent and not make any statement at all. All statements he made were made freely and voluntarily, and having waived the right to counsel. The videotapes of various interviews showed the interviews to be generally amicable, there was no coercion or duress or undue influence, at every stage he was advised of his rights either literally or in substantial compliance with art. 38.22 Texas Code of Criminal Procedure, and defendant willingly engaged in discussions in an attempt to absolve himself of guilt and convince investigators he was not responsible for the offense. During the week period of time, the actual interviews with defendant were not unduly long, were no longer than a typical day in court per day and were not so onerous as to constitute coercion or duress or undue influence. During this period of time, he was allowed breaks, allowed the opportunity for meals, allowed use of tobacco, and given the opportunity to sleep. During this period, investigators prayed with defendant. Defendant's use of glasses did not prevent his statements from being voluntary or prevent him from understanding his rights or knowing what the contents of the documents he was given the opportunity to read contained. His regular glasses were no stronger than ordinary reading glasses easily purchased at local stores without prescription, and from the video evidence did not prevent him from reading documents. He at no time stated or indicated he did not read a document because he did not have his glasses, or he was given glasses which he used to read without complaint.

*Ex parte Arciba*, WR-76,955-01, Tr. at 90-91. The trial court also found that Petitioner was advised of his constitutional rights before consenting to participate in the polygraph exam on September 8, 2006 and that, with regard to a medical episode that occurred on September 7, 2006, Petitioner's "medical condition was not due to the interrogation by Chief Sullins, or any measure of coercion or duress." *Id.* at 89.

Considering the state court record, the state habeas court's denial of Petitioner's claim was not unreasonable and that court did not unreasonably apply clearly established federal law.

-9-

Petitioner claims that "the interrogators who questioned [him] set out to purposefully mislead him as to the true nature and scope of the investigation into his activities with Ms. Phillips[,] continually reassur[ed] him that they would care for and protect his mother, and [by stating that] his assistance in locating Ms. Phillips would help restore his mother's poor health, they lulled [Petitioner] into a false sense of security." Dkt. No. 3 at 11. But the trial court determined that such promises and assurances did not rise to the level of coercion. *See Ex parte Arciba*, WR-76,955-01, Tr. at 94. The undersigned concludes that, at the least, the state habeas court's determination that Petitioner is not entitled to relief, on this record, did not involve unreasonable application of clearly established federal law and was not unreasonable in light of the evidence presented in the state court proceeding. In any case, the Supreme Court has made clear that "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (quoting *Moran v. Burbine,* 475 U.S. 412, 424 (1986)). In this case, Petitioner was well aware of his rights because he had been given numerous *Miranda* warnings and had waived his rights multiple times. In fact, Petitioner admitted under cross-examination during the pretrial hearing that he was aware of his constitutional rights throughout the interview process. *See* SF-IV at 266-67. "Furthermore, courts have found waivers to be voluntary even in cases where officers employed deceitful tactics." *Soffar*, 300 F.3d at 596 (citing *Colorado v. Spring,* 479 U.S. 564, 575 (1987)).

Similarly, the Texas courts concluded that the appeals to Petitioner's religious values or conscience and use of prayer did not rise to the level of coercion or induce him to falsely confess. *See Ex parte Arciba*, WR-76,955-01, Tr. at 94; *see also Arciba*, 2009 WL 5155532, at *6. Considering the evidence adduced during the motion hearing, the state court was not unreasonable in denying this claim. In addition, the use of prayer and other appeals to religious beliefs is not, standing alone, improperly coercive conduct. *See Welch v. Butler*, 835 F.2d 92, 95 (5th Cir. 1988).

Here, federal habeas relief is precluded. Petitioner has not shown that, in light of the totality of the circumstances, a reasonable factfinder must conclude that it was unreasonable for the state court to deny habeas relief after determining that Petitioner's statements were freely and voluntarily given and were not the product of improper coercion. Further, habeas relief is precluded here where, at the least, fairminded jurists could disagree on the correctness of the state court's decision.

Alleged Denial of Counsel

Petitioner next claims that he was denied his right to counsel despite requesting an attorney multiple times during the police questioning and at three arraignment proceedings before Justice of the Peace Polk. *See* Dkt. No. 3 at 6 & 14. The Texas courts concluded that Petitioner knowingly waived his Fifth Amendment right to counsel prior to each interview with the officers, signed and initialed written waivers of his *Miranda* rights contained within each written statement, and never subsequently invoked his right to counsel during the interviews. *See Ex parte Arciba,* WR-76,955-01, Tr. at 86-95; *Arciba*, 2009 WL 5155532, at *8-*9. The trial court held that Petitioner's

testimony that he requested an attorney before giving each of his written statements was "not credible and not true." *Ex parte Arciba*, WR-76,955-01, Tr. at 86-87, 89-91.

There is an extensive record to support the habeas court's denial of Petitioner's claim for relief based on the alleged denial of counsel. The transcript of the suppression hearing contains testimony from each officer that conducted the interviews of Petitioner, includes signed and initialed forms indicating that Petitioner understood and waived his right to counsel, and reflects Petitioner's acknowledgment on cross-examination that he was fully aware of his right to an attorney. *See* SF-IV at 266-67; *see also* SF-XII at Exhibits P-3, P-7, P-8, P-9, P-10, P-11, P-12, P-13, P-14, P-17, & P-18.

Similarly Petitioner's constitutional rights were not violated by any alleged failure of Justice of the Peace Polk to appoint counsel immediately after the September 4, 2006 arraignment. The Supreme Court has held that a defendant's invocation of his Sixth Amendment right to counsel during judicial proceeding does not constitute an invocation of right to counsel derived from the Fifth Amendment by *Miranda v. Arizona. See McNeil v. Wisconsin*, 501 U.S. 171, 181-82 (1991). The Sixth Amendment right to counsel is offense-specific, so "a defendant's statements regarding offenses for which he had not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *Texas v. Cobb*, 532 U.S. 162, 168 (2001) (citing *McNeil*, 501 U.S. at 176). A defendant's Sixth Amendment right to counsel attaches only to charged offenses, and there is no exception for uncharged crimes that are "factually related" to a charged offense. *Cobb*, 532 U.S. at 168-69. The

-12-

oral and written statements provided by Petitioner after his September 4 arraignment for burglary of a habitation were unrelated to the burglary investigation; instead, they concerned the whereabouts of Phillips and Petitioner's possible role in her disappearance. *See, e.g.,* SF-XII at Exh. P-8, P-13, & P-17.

Accordingly, the habeas court was not unreasonable in denying this claim.

<u>Illegal Search</u>

Petitioner claims that the search of his car was unconstitutional because the vehicle was allegedly searched without consent or a valid search warrant. *See* Dkt. No. 3 at 14-15. But Petitioner submitted no evidence – aside from his personal belief – that his vehicle was searched prior to the issuance of a search warrant on September 5, 2006. *See* SF-IV at 214.

Regardless, a federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. *See Stone v. Powell,* 428 U.S. 465, 493-95 (1976). This rule applies to both unlawful arrest claims and illegal search and seizure claims. *See Hughes v. Dretke,* 412 F.3d 582, 596 (5th Cir. 2005). A habeas petitioner must plead and prove that the state court proceeding was inadequate in order to obtain post-conviction relief in federal court. *See Davis v. Blackburn,* 803 F.2d 1371, 1372 (5th Cir. 1986).

Here, Petitioner's Fourth Amendment claim was fully litigated in the state court, and Petitioner has failed to establish that the proceeding was inadequate.

Ineffective Assistance of Counsel at Pretrial Hearing

Petitioner claims that he received ineffective assistance of counsel because his trial counsel was unfamiliar with the Supreme Court's holding in *Missouri v. Seibert*, 542 U.S. 600 (2004), and neglected to argue that the appeal to his religious values violated *Davis v. North Carolina*, 384 U.S. 737 (1966). *See* Dkt. No. 3 at 16-17.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *cert. denied,* 133 S.Ct. 1584 (2013). And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at 792.

In *Seibert*, the Supreme Court held that *Miranda* warnings given mid-interrogation will generally result in the entire confession being inadmissible unless the warnings were still able to serve their intended function. *See Seibert,* 542 U.S. at 611-12. However, the record does not establish that Petitioner confessed prior to the administration of *Miranda* warnings. Instead, the trial court found – and the record confirms – that Petitioner was fully informed of his constitutional rights prior to any of his written or oral statements. *See Ex parte Arciba*, WR-76,955-01, Tr. at 92-94. Accordingly, his lawyer was not ineffective for failing to argue a meritless claim under *Seibert. See Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997).

Petitioner's claim that his counsel should have invoked *Davis v. North Carolina* is also without merit. *Davis* generally stands for the proposition that sustained pressures upon a defendant – such as extensive interrogation without the benefit of counsel, *Miranda* warnings, or the ability to contact others via telephone – are significant factors undermining the voluntariness of a confession. *See Davis*, 384 U.S.

at 740-41.[2] Whether or not defense counsel cited *Davis,* he repeatedly argued that Petitioner's will was overborne by the cumulative effect of the officers' conduct, which included repeated appeals to Petitioner's religious beliefs. *See, e.g.,* SF-IV at 327-34. There is no evidence that Petitioner's statements would have been suppressed had his counsel cited *Davis* or better "argued how the law applied to these facts."

Where, as here, the state court adjudicated an ineffective-assistance claim on the merits, this Court must review Petitioner's claim under the doubly deferential standards of both *Strickland* and Section 2254(d). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard," it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington,* 131 S. Ct. at 785. Here, Petitioner has failed to rebut the state habeas court's findings regarding his allegations of ineffective assistance that "trial counsel was thorough and prepared during the hearings on the pretrial motions and that trial counsel's performance was not deficient." *See Ex parte Arciba*, WR-76,955-01, Tr. at 161. As such, federal habeas relief is precluded.

Assistance of Petitioner's Appellate Counsel

Petitioner contends that his appellate attorney was deficient for failing to fully brief seven of the nine issues raised on direct appeal. *See* Dkt. No. 3 at 15-16. He

---

[2] It appears that Petitioner may fault his attorney for failing to raise the Fourth Circuit's ruling in *Davis*, which suggested that certain prayers invoking divine punishment may be improperly coercive. *See Davis v. North Carolina*, 339 F.2d 770, 775-76 (4th Cir. 1964), *rev'd*, 384 U.S. 737 (1966). However, that Fourth Circuit decision is not binding precedent in Texas.

claims that his lawyer should have more fully urged unspecified issues that "were not heard by the appellate court because counsel failed to properly present them to the court." *Id.* at 16.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *id.* at 754 (holding that, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*" and that "[n]othing in the Constitution or our interpretation of that document requires such a standard"). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003).

To prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought

-17-

to the court's attention.'" *Id.* (quoting *United States v. Williamson,* 183 F.3d 458, 462-63 (5th Cir. 1999)).

Here, Petitioner does not identify which issues should have been more fully briefed, nor does he establish that such claims would have been successful if raised. He has not explained how any of his points of error, if more effectively presented, would have resulted in a different outcome.

The state habeas court found that Petitioner "has not carried his burden to show that the performance of counsel on appeal was deficient or that the outcome of the proceeding would have been different but for deficient performance by counsel." *Ex parte Arciba*, WR-76,955-01, Tr. at 161. Again, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard," it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington,* 131 S. Ct. at 785. Petitioner has failed to establish that the state court's determination was unreasonable.

<u>State Habeas Petition</u>

Petitioner argues in his petition that the state habeas court's decision is "contrary to established federal law" because that court never held an evidentiary hearing and neglected to obtain an affidavit from defense counsel. *See* Dkt. No. 3 at 18; *see also* Dkt. No. 19 at 2-3. The Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (citing cases). "That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not

the detention itself." *Id.* at 320. To the extent Petitioner seeks federal habeas relief on that ground, his claims are precluded by Fifth Circuit precedent.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 15, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE